UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **KATHRYN FOX,** <br><br> Plaintiff, <br><br> vs. <br><br> **UNIVERSAL LOGISTICS HOLDING, INC.,** <br><br> Defendant. | **2:23-CV-13135-TGB-EAS** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 15)** |

Plaintiff Kathryn Fox worked for Defendant Universal Logistics Holdings, Inc. for approximately two months in late 2020 as a "Dockman-Forklift" employee before she was terminated while still on probationary status for poor performance. She has sued her former employer under 42 U.S.C. § 1981 and the Michigan Elliott-Larsen Civil Rights Act, claiming that she was subjected to age and racial discrimination, and that she was retaliated against for reporting discrimination.

Defendant Universal Logistics Holdings, Inc. now moves for summary judgment on all of Fox's claims. ECF No. 15. The motion has been fully briefed. A hearing was held on March 13, 2026, at which counsel for Plaintiff and Defendant appeared and argued. For the reasons stated below, Defendant's Motion for Summary Judgment will be **GRANTED**.

1

# I.    BACKGROUND

Defendant Universal Logistics Holdings, Inc. ("Universal") hired Plaintiff Kathryn Fox, an African American woman, at age 55, on October 12, 2020 for a "Dockman-Forklift" position at its Huber facility in Warren, Michigan.[1] New Hire Form, ECF No. 15-3, PageID.113. All workers at the Huber facility at that time were general warehouse workers and there was no distinct description of their job duties. Deposition of Ricky Caudill at 10, ECF No. 15-4, PageID.119. All warehouse workers were required to go through training to obtain forklift (or "hi-lo") certification and "tugger" certification, even if they had prior certification or experience operating a forklift. *Id.* at 10–12, PageID.119. A "tugger" is a smaller industrial vehicle that is used to pull multiple carts around the warehouse for "part picking." *Id.* If a worker failed forklift training, Universal assigned them to be a tugger driver in a small

---

[1]    Universal states that Huber was Fox's employer and is therefore the proper Defendant in this case instead of Universal. ECF No. 15, PageID.75 fn. 1. Fox does not address this statement in her Response, but agreed in her deposition that Huber was her employer. Deposition of Kathryn Fox at 6, ECF No. 15-2, PageID.102. Nevertheless, the Court will continue to refer to Defendant as "Universal" in this Order.

Further, while Fox asserts in her deposition that she was hired "on the spot" on the day she interviewed for the Dockman-Forklift position, she further testified that she was told she would have to "go to the clinic before [she was] hired and everything." *Id.* at 7–8, ECF No. 102. After going to a clinic, *id.*, Fox concedes that "[t]he employment relationship … was formally established on October 12, 2020[.]" ECF No. 18, PageID.185.

lot. *Id.*. If they failed both certifications, "they would likely be removed from the operation." *Id.* at 12, PageID.119.

Dockman-Forklift employees were assigned forklift duties when and as needed, and performed other general warehouse worker tasks when and as needed to support the company's operations. Declaration of Jennifer Lanier ¶ 10, ECF No. 15-7, PageID.139. There was no difference in pay, hours worked, overtime, or performance expectations based on whether a warehouse worker was performing forklift duties, tugger duties, or general warehouse duties. Caudill Dep. at 11, ECF No. 15-4, PageID.119.

Fox was a probationary employee under the Collective Bargaining Agreement between Logistics Insight Corp. and Teamsters Local Union No. 299 at all times during her two-month employment with Universal. ECF No. 15-6, PageID.131. Jennifer Lanier, an African American woman, was Fox's direct supervisor on a daily basis. Fox Dep. at 9, ECF No. 15-2, PageID.102; Deposition of Shelby Massey at 13, ECF No. 15-5, PageID.127; Lanier Decl. ¶ 5, ECF No. 15-7, PageID.137. And Ricky Caudill was the second shift assistant plant manager at the Huber facility at that time. Caudill Dep. at 6–7, ECF No. 15-4, PageID.118.

Upon starting her employment with Universal, Fox successfully obtained certifications for both forklift and tugger operations. *Id.* at 14–15, PageID.120. Fox stated that for the first month of her employment, she was primarily working on the warehouse floor, pulling parts and

3

tugger driving, and that she did not start operating a forklift until around the end of November or beginning of December. Fox Dep. at 8, 13, ECF No. 15-2, PageID.102–03. She then worked operating a forklift for the remainder of her employment with Universal. *Id.* at 21, PageID.105. Fox nevertheless complained to Lanier and Caudill that other younger and less experienced employees were assigned to operate a forklift before she was, complaining that she "felt like [she] was being singled out because all of the young people that came in before [her], they were put on the hi-lo." *Id.* at 13–15, 29, PageID.103–04, 107. Fox specifically complained that Donnamarie Dixon and Steven Brown, both African American employees in their 20's and employed at the Huber facility before Fox was, were allowed to operate a forklift before she was. *Id.* at 12–14, PageID.103–04; Lanier Decl. ¶¶ 13–20, ECF No. 15-7, PageID.140 (stating Dixon was hired on or about September 14, 2020 and Brown was hired on or about September 21, 2020). Fox said that Caudill responded only that "once they [the company] get everything launched, everything will fall in place." Fox Dep. at 15, ECF No. 15-2, PageID.104.

Fox testified about various other complaints during her two-month employment at Universal. She said that she complained to Caudill that she was "being harassed" in some manner by unidentified "younger girls" at Universal. She said that Caudill said he would talk to them and have a meeting, but a meeting never took place. *Id.* at 11–12, PageID.103. She complained to another employee that "the girls didn't want to train me

for a scanner when I already knew how the scanners worked." *Id.* at 10, PageID.103. Fox further testified that she felt like Lanier showed favoritism to certain employees because she was friends with them. *Id.* at 16–18, PageID.104–05.

Universal, on the other hand, reports that Fox's performance issues began shortly after she started working at the Huber facility. Lanier Decl. ¶ 6, ECF No. 15-7, PageID.137–38. Her supervisor, Lanier, testified that Fox was combative, demonstrated a poor attitude, and did not always follow directions given to her by her supervisors. *Id.* Lanier stated that Fox went through three different assignments during her brief tenure at the Huber facility, and that she was unsuccessful in each assignment. *Id.* In her first assignment, Lanier reported that Fox could not refrain from bickering with her coworkers. *Id.* As to her second assignment, Fox was not successful according to Lanier because she was unable to catch on to the required tasks, despite Lanier's demonstrations as to what Fox was doing wrong and Lanier's repeated attempts to retrain her. *Id.* And finally, when Fox was assigned to forklift duties, Lanier found that she continued to have performance issues there as well. *Id.* Lanier states that it took Fox much longer to move freight than the average person using the forklift, and at times Fox moved material without scanning it properly, which is a critical part of the process. *Id.* As a result, Lanier had to stay late to try to physically locate the freight in the building. *Id.* Fox similarly testified that once she finally did start

driving a forklift, "parts began to come up missing" and were "stacked in the wrong place." Fox Dep. at 13–14, ECF No. 15-2, PageID.103–04. Lanier further testified that overall, Fox had a difficult time getting along with her coworkers and struggled to be a team player. Lanier Decl. ¶ 6, ECF No. 15-7, PageID.138.

Caudill signed a "Temp to Direct Hire Evaluation" of Fox dated December 1, 2020. ECF No. 15-11, PageID.172. Caudill noted in the evaluation that Fox "has struggled adjusting to the Universal processes" and she was "unable to pick up the container reload process with the different type of RCM containers" and also "struggle[ed] with the inbound put aways and the speed of which we would like employees to work at." *Id.* He notes "[w]e have tried to place her on a couple different jobs and she is [sic] not grasped any of them" and that there have been "several behavioral issues with [Fox] as well." *Id.* The evaluation concludes that "[w]e do not feel that [Fox] will be a good fit for the Universal team." *Id.*

Lanier spoke to Shelby Massey, the Huber facility's Office Supervisor, about Fox's performance issues and poor attitude. Lanier Decl. ¶ 7, ECF No. 15-7, PageID.138; Massey Dep. at 14, ECF No. 15-5, PageID.128. Massey then sent an email dated December 10, 2020 to her supervisor, Lisa Myers, Labor Relations Manager, copying Bob Weissend, Labor Relations Manager, stating:

> After talking with Jen, Kathryn's supervisor, this is the list of reasons why we need to let her go …

1. Kathryn is combative and has a poor attitude. Does not always want to follow directions given to her by her supervisors.
2. Kathryn has had 3 different assignments while with Universal. The first assignment did not work out because she could not refrain from bickering with her coworkers. The second assignment did not work out because she was unable to catch on. Jen tried to retrain her and show her what she was doing wrong several times, however, Kathryn just could not grasp the concept. Most recently Kathryn is on a Hi-Lo and occasionally has issues with that as well.
3. Kathryn has a difficult time getting along with her coworkers and struggles to be a team player.

Overall, with her work performance and poor attitude, we feel that it would be best to part ways at this time.

Massey Email, ECF No. 15-7, PageID.143.

Fox, who was still a probationary employee, was then terminated on December 10, 2020, according to Defendant because of her performance issues and difficult interactions with others. Lanier Decl. ¶ 9, ECF No. 15-7, PageID.139; ECF No. 15-6, PageID.131.

On December 9, 2023, Fox brought this lawsuit against Universal, asserting claims for race discrimination, age discrimination, and retaliation in violation of 42 U.S.C. § 1981 and the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* ("ELCRA"). ECF No. 1.

Following the close of discovery, Universal filed the instant motion for summary judgment. ECF No. 15. Universal argues that Fox cannot establish a genuine issue of material fact as to her age and race

7

discrimination claims or her retaliation claims. Fox filed a response in opposition to Universal's motion, ECF No. 18, and Universal filed a reply brief in support of its motion. ECF No. 19.

## II.   LEGAL STANDARD

A party is entitled to summary judgment if it "shows that there is no genuine to dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). No genuine material factual dispute exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the Court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in her favor. *Id.* The nonmoving party's evidence need not be in an admissible form. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). But she must "show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

## III.   DISCUSSION

### A. Fox's Race and Age Discrimination Claims

Fox asserts a race discrimination claim under § 1981 and race and age discrimination claims under the Michigan ELCRA. Compl. Counts II, III, IV, ECF No. 1. Claims of employment discrimination under § 1981 and the ELCRA are analyzed under the same standards as claims of discrimination under Title VII. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)). To survive summary judgment and proceed to trial, a plaintiff may rely on either direct or circumstantial evidence. *Id.*

"Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-Plough, Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). To constitute direct evidence of discrimination, a discriminatory statement must be made by a decisionmaker related to the decisional process. *Geiger v. Tower Auto.*, 579 F.3d 614, 620–21 (6th Cir. 2009) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden ... of demonstrating animus.").

Absent direct evidence of discrimination, claims brought pursuant to § 1981 and the ELCRA are subject to the *McDonnell Douglas/Burdine*

tri-partite burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–56 (1981). Under this framework, the plaintiff bears the initial "not onerous" burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 253. If plaintiff satisfies that showing, defendant has the burden of articulating a legitimate, nondiscriminatory business reason for terminating plaintiff. *Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769, 778 (6th Cir. 2016). "Once the employer has come forward with a nondiscriminatory reason for firing the plaintiff, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* at 779 (citation modified).

Universal argues that the record contains no genuine issue of material fact supporting Fox's race and age discrimination claims and that summary judgment should be therefore granted in its favor. Universal contends that Fox does not allege any direct evidence of age or race discrimination. As to this point, Universal's position is correct: Fox fails to identify any discriminatory statement made by a decisionmaker related to the decision to terminate her employment that would constitute direct evidence of discrimination. *See Geiger*, 579 F.3d at 620–21. Universal further argues that the record does not support Fox's race and age discrimination claims with adequate circumstantial evidence

10

that could  establish a prima facie case of age or race discrimination, and even if she could, she fails to present any evidence that Universal's reasons for discharging her were a pretext for age or race discrimination.

### 1. Prima facie case of race or age discrimination

To establish a prima facie case of unlawful discrimination, Fox must demonstrate that "(1) she is a member of a protected class, (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was treated differently than similarly situated non-protected employees." *Laster v. City of Kalamazoo,* 746 F.3d 714, 727 (6th Cir. 2014). Here, it is undisputed that Fox is a member of a protected class (African American and over age 40) and Universal does not contest the second prong of Fox's prima facie case (that she was qualified to perform the job) in its motion. As to the third prong, Universal agrees that Fox's termination constituted an adverse action, but argues that her complaint that younger workers were assigned forklift duties before she was does not amount to an adverse action. Universal further argues that Fox cannot meet her burden to show that Caucasian or younger individuals engaged in the same conduct she did and were treated differently than she was. Finally, Universal asserts that Fox cannot show that she was replaced by a Caucasian or younger employee[2] because Universal did not hire anyone to replace Fox.

---

[2]   "Unlike the federal Age Discrimination in Employment Act, the ELCRA 'imposes no age forty protected class limitation in ELCRA age

### a. Adverse action

Universal properly concedes that Fox's termination constitutes an adverse action for purposes of her race and age discrimination claims. Universal argues, however, that Fox's complaint that she was not assigned forklift duties as quickly as some younger employees does not constitute an adverse action.

"An adverse action is one in which an employee suffers a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status." *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 786 (6th Cir. 2024) (citation modified). The Supreme Court has explained that an adverse employment action need not be "serious," "significant," or "substantial"; instead, the plaintiff "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). "In short, the employment action is adverse if it leaves the employee 'worse off respecting employment terms or conditions.'" *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 900 (6th Cir. 2024) (quoting *Muldrow*, 601 U.S. at

---

discrimination actions, and does not require that an ELCRA plaintiff show replacement by a *substantially* younger employee. An ELCRA plaintiff need only show replacement by a younger individual.'" *Gibbs v. Voith Indus. Servs., Inc.*, 60 F. Supp. 3d 780, 793 (E.D. Mich. 2014) (Michelson, J.) (emphasis added) (quoting *Winter v. Fitness USA Health Spas Corp.-Flint/Lansing,* No. 188648, 1999 WL 33430030, at *2 (Mich. Ct. App. Nov. 12, 1999) (per curiam)).

355). However, "[a] 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)).

Fox failed to explain, both in her Response brief and at the hearing, why a claimed delayed assignment to forklift duties "produces a 'disadvantageous' change in an 'identifiable term or condition'" of her employment at Universal. *See McNeal*, 117 F.4th at 901 (citing *Muldrow*, 601 U.S. at 347). While she may have preferred to operate a forklift while working, Fox was hired as a Dockman Forklift employee, and in that position Fox was expected to perform all warehouse duties at the Huber facility. Caudill Dep. at 10–11, ECF No. 15-4, PageID.119. Dockman-Forklift employees were assigned forklift duties or other warehouse tasks when and as needed to support the company's operations. *Id.* However, there was no difference in pay between forklift and non-forklift duties and no difference in hours worked, overtime, or performance expectations. *Id.* Further, Lanier testified that the timing of Fox's placement on forklift duties had nothing to do with the decision to terminate her employment. Lanier Decl. ¶ 10, ECF No. 15-7, PageID.139. Fox presents no evidence to the contrary and Plaintiff's counsel in fact asserted at the hearing that the termination of Fox's employment is the only adverse action supporting her discrimination claims.

13

Accordingly, while Fox may have preferred being assigned to forklift duties earlier than she was, she offers no evidence showing she suffered any negative consequences or harm to an identifiable term or condition of her employment because of her claimed delayed assignment. Therefore, by itself, delayed assignment of forklift duties creates no issue of fact concerning the existence of an adverse action supporting Fox's race and age discrimination claims. *See Milczak*, 102 F.4th at 786; *see also Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 449–50 (6th Cir. 2004) (holding that alleged scheduling that resulted in plaintiff receiving more difficult workloads, and the employer's failure to train plaintiff on rural delivery routes, were not cognizable "adverse actions" for purposes of a disparate treatment claim); *Brown v. FCA US LLC/Stellantis*, No. 23-cv-11768, 2025 WL 975371, at *5 (E.D. Mich. Mar. 31, 2025) (Goldsmith, J.) (finding no adverse action when "[a]side from self-serving and subjective affidavits claiming that her transfers affected her "professional growth," [plaintiff] does not point to any tangible effect on the terms and conditions of her employment."), *aff'd*, No. 25-1405, 2025 WL 3657226 (6th Cir. Dec. 17, 2025).

### b. Similarly situated

To establish the fourth prong of her prima face case of race or age discrimination, Fox must establish that: (1) she was replaced by someone outside the protected class, or (2) she was treated differently than a

14

similarly situated, non-protected employee. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

Fox has not presented any evidence to show that she was replaced by a Caucasian or younger employee. Universal in turn has offered evidence that Fox was not replaced. ECF No. 15-6, PageID.132 ("Defendant cannot identify any person hired to replace Plaintiff after Plaintiff's termination. Defendant hired several new employees that were not specifically for Plaintiff's position."). In the Sixth Circuit, "[a] person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties; a person is not considered replaced when his duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work." *Geiger*, 579 F.3d at 623 (citation modified).

Can Fox then show that she was treated differently than a similarly situated non-protected employee? To do so, Fox must "show 'that [she] and [her] proposed comparators were similar in all relevant respects and that [she] and [her] proposed comparators engaged in acts of comparable seriousness.'" *Bates v. American Axle & Mfg., Inc.*, No. 18-2260, 2019 WL 4941946, at *2 (6th Cir. Sept. 17, 2019) (quoting *Bobo v. United Parcel Servs., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)). To make this assessment, the Court looks to factors such as whether the individuals have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of them. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). Universal contends that Fox cannot identify a single Caucasian or younger employee with similar job performance and attitude problems as Fox who was not terminated.

In her Response brief, Fox makes the unsupported assertion that she "witnessed at least one younger, non-African American female employee engage in serious misconduct trying to run her over with a Hi-Lo yet that individual was not terminated." ECF No. 18, PageID.201. However, earlier in her Response, Fox stated that this incident happened to a co-worker, Donnamarie Dixon, and not her. *See id.* PageID.194 (citing Deposition of Donnamarie Dixon at 13–14, ECF No. 18-3, PageID.240-41). In the absence of any supporting testimony, the assertion that this incident happened to Fox amounts to attorney argument. But even if accepted as a claimed fact, this assertion falls short of the meeting the legal standard because it does not state who this unnamed employee was, the race or age of this unnamed employee, that this unnamed employee was "similar in all relevant respects" to Fox, or that the employee "engaged in acts of comparable seriousness" to those of Plaintiff and was treated more favorably. *See Bates*, 2019 WL 4941946, at *2. Fox was terminated for poor performance and attitude problems. This unnamed employee allegedly attempted to run Fox over with a forklift. While such reckless conduct would clearly seem to warrant some

16

kind of discipline or even termination, the record is bereft of other facts necessary to show whether the employees were similarly situated. The Court further explored the similarly-situated inquiry at the hearing, and Plaintiff's counsel was unable to identify any other employee who engaged in similar conduct—poor performance and attitude problems— who was not terminated.

Fox instead points to three alleged comparators who she alleges were treated more favorably than she was with respect to assignment to forklift duties—Donnamarie Dixon, Steven Brown, and John (last name unknown) (a temporary worker). ECF No. 18, PageID.201–02. As stated above, delayed placement on forklift duties does not constitute an adverse employment action for purposes of Fox's prima facie case of age or race discrimination. But, even if it did, Fox has failed to identify a similarly situated non-protected employee who was treated more favorably than she was. Fox contends that Dixon (African American) and Brown (African American) were assigned forklift duties before she was.[3] However, both Dixon and Brown were hired and began their employment with Universal *before* Fox did, not after, and both were working on forklift duty before Fox was even hired. They did not receive this assignment in preference to Fox. Lanier Decl. ¶¶ 13–20, ECF No. 15-7, PageID.140. Universal also

---

[3]    Because Dixon and Brown are both African American, the same race as Fox, they cannot serve as comparators for purposes of Fox's race discrimination claim.

presented evidence that Dixon and Brown were better workers than Fox, successfully completing necessary tasks and properly performing assignments. *Id.* Dixon and Brown are therefore not similarly situated to Fox in all relevant respects with respect to assignment to work on the forklift.

As to Fox's third alleged comparator, the employee named John, Fox concedes that John was not a Universal employee, but instead was employed by a temp company. Fox Dep. at 27, ECF No. 15-2, PageID.107. Fox further testified that she did not complain to anyone at Universal that John was receiving more time on the forklift than she was. *Id.* at 27–28, PageID.107. Thus, John is not similarly situated to Fox in all relevant respects. *See Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 772–73 (6th Cir. 2014) (temporary worker was not similarly situated to plaintiff who was employed by defendant); *Zapata v. URS Energy & Constr., Inc.*, No. 3:13 CV 2203, 2015 WL 3953106, at *6 (N.D. Ohio June 29, 2015) ("Zapata is not similarly situated with Jason Grimes because Zapata was an intermittent, contract employee, while Jason Grimes had worked for URS for many years.").

While establishing a prima facie case of age or race discrimination is not onerous, it does require more than Fox has shown. Because Fox has failed to establish a prima facie case of race or age discrimination under § 1981 or the ELCRA, Universal is entitled to summary judgment on those claims.

### 2. Pretext for discrimination

But even assuming for the sake of argument that Fox's facts were sufficient to establish a prima facie case of race or age discrimination, Universal offers proof of legitimate, nondiscriminatory reasons for Fox's termination—her unsatisfactory work performance and her poor attitude. Lanier Decl. ¶¶ 6–9, ECF No. 15-7, PageID.139; ECF No. 15-11, PageID.172. The Sixth Circuit has determined that "poor performance is a legitimate non-discriminatory reason for [the defendant] to terminate [the plaintiff]." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011).

Because Universal presents evidence articulating a legitimate, nondiscriminatory reason for terminating Fox's employment, the burden shifts to Fox to identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Wright*, 455 F.3d at 707. Unlike a plaintiff's burden at the prima facie stage of her case, the "burden at the pretext stage is onerous: plaintiffs must demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for [discrimination]." *Hood v. City of Memphis Pub. Works Div.*, No. 21-5372, 2023 WL 1880399, at *6 (6th Cir. Feb. 10, 2023) (cleaned up). Fox may establish pretext by showing (1) that the proffered reason had no basis in fact, such as reasons that are "purely concocted and conflict with the facts in the record;" (2) that the proffered reason did not actually motivate her discharge, "as when an employer

19

cites a facially valid reason as a mere coverup for its true discriminatory motives;" or (3) that the proffered reason was insufficient to motivate discharge. *See Miles v. South Central Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020); *Harris v. City of Akron, Ohio*, 836 F. App'x 415, 420 (6th Cir. 2020). This three-part test need not be applied rigidly, as pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? *See Miles*, 946 F.3d at 888.

Universal argues that Fox offers no evidence capable of establishing a genuine issue of material fact as to pretext under any of the three methods listed above. ECF No. 15, PageID.91–93. For the reasons that follow, the Court agrees.

### a. No basis in fact

To show pretext on the ground that the stated reasons for termination had no basis in fact, Fox "must provide evidence that the employer's allegations never happened." *Miles*, 946 F.3d at 888–89. For this first prong, "the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Fox contends that there is no documentary evidence such as performance evaluations, write-ups, or employment of progressive discipline to substantiate Universal's claim of Fox's unsatisfactory work performance and poor attitude. ECF No. 18, PageID.199. The Court first notes that it is undisputed that Fox was a probationary employee at the

20

time of her termination, and Fox has failed to present any evidence that, as a probationary employee, she was subject to a progressive discipline policy. In general, "[p]robationary employees are not entitled to the application of progressive discipline, may be disciplined and removed without just cause, and may not avail themselves of certain grievance procedures under the [collective bargaining agreement.]" *Cassell v. Brennan*, No. 3:14-CV-449, 2016 WL 6123242, at *4 (W.D. Ky. Oct. 19, 2016); *see also West v. Shulkin*, No. 17-14218, 2019 WL 3239150, at *10 (E.D. Mich. July 18, 2019) (Ludington, J.) ("[M]ere acknowledgment of a progressive discipline policy within the [defendant's organization] does not alone corroborate Plaintiff's contention that Defendant's proffered reason for Plaintiff's termination was pretextual [because] Plaintiff does not provide evidence that she, or even probationary employees as a collective group, were subject to the policy.").

Moreover, Fox's claim that there was no documentary evidence to support her termination is incorrect. On December 1, 2020, Caudill completed Fox's Temp to Direct Hire Evaluation, and identified both performance issues and behavioral concerns on that form. ECF No. 15-11, PageID.172. In addition, Lanier testified that she met with Massey to address her concerns regarding Fox's work performance, and Massey in turn relayed those concerns in a detailed December 10, 2020 email to Labor Management Relations Manager Myers, recommending Fox's termination, again identifying both performance issues and behavioral

21

concerns. ECF No. 15-7, PageID.143; Massey Dep. at 12, ECF No. 15-5, PageID.127; Deposition of Lisa Myers at 11–12, ECF No. 15-8, PageID.153.

Plaintiff's counsel argued at the hearing that Universal has provided "shifting" reasons for her termination. "True, under [the Sixth] [C]ircuit's precedent, an employer's shifting termination rationales are evidence that the proffered rationale may not have been the true motivation for the employer's actions." *Miles*, 946 F.3d at 890 (citations omitted). So, had Universal shifted its rationale for Fox's termination, that could establish pretext. But a review of the record evidence in this case shows that Universal has consistently articulated the same reasons for terminating Fox's employment—poor performance and behavioral issues. Caudill completed Fox's Temp to Direct Hire Evaluation on December 1, 2020 and identified both performance issues and behavioral concerns. ECF No. 15-11, PageID.172. On December 10, 2020, Massey met with Fox's supervisor, Lanier, who reported Fox's performance issues and difficulty getting along with coworkers, and Massey then sent an email that same day recommending Fox's termination because of her "work performance and poor attitude." *Id.* PageID.143. And finally, in Universal's Answers to Plaintiff's Interrogatories, it stated that Fox "was terminated as a probationary employee because of her performance and interactions with others." ECF No. 15-6, PageID.131. Universal's reasons for terminating Fox therefore did not "shift."

Fox has provided no evidence that these stated reasons for her termination were fabricated or that Universal did not honestly believe them. *See Chen*, 580 F.3d at 401 ("Disputing facts is not enough—instead, the plaintiff must produce evidence demonstrate[ing] that the employer did not 'honestly believe' in the proffered nondiscriminatory reason for its adverse employment action."). In fact, some of Fox's own testimony corroborates Universal's position that she was having problems. Fox testified that "once [she] was placed on the Hi-Lo, parts began to come up missing, they were stacked in the wrong place," and that Lanier brought that to Fox's attention. Fox Dep. at 13–16, ECF No. 15-2, PageID.103–04. Fox's subjective evaluation of her work performance as adequate does not create an issue of fact as to whether Universal's reasons were fabricated; it does not mean Universal's legitimate non-discriminatory reason for her termination had no basis in fact. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (the plaintiff's "subjective view of her qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination"). The Court must not "substitute its judgment for that of management" and its "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.*

Fox also offers the opinion of one of her coworkers, Djuan Smith, (who is also the father of Fox's grandchildren) as to Fox's work performance. This testimony similarly fails to undermine Universal's

legitimate non-discriminatory reason for Fox's termination. Smith, who did not initially even know that Fox was working for Universal until Fox's daughter told him, states that he would only "see [Fox] periodically from time to time" and he would "wave; say how are you doing, and keep on going." Deposition of Djuan Smith at 13, ECF No. 18-2, PageID.214. He testified that he "wasn't hands on with whatever [Fox] and the supervisors or the team lead talked about." *Id.* at 28, PageID.218. Accordingly, Smith's subjective opinions of Fox's work performance, to the extent he claims he observed it, fails to demonstrate pretext. *See Broadnax v. Rhombus Energy Sols., Inc.*, No. 23-11343, 2025 WL 376037, at 5 (E.D. Mich. Feb. 3, 2025) (Steeh, J.) (coworker's statements about the work environment "are generally 'nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient to establish a claim of discrimination as a matter of law.'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992)), *aff'd*, 2025 WL 2933015 (6th Cir. Oct. 15, 2025). Smith's beliefs that Fox was performing adequately, based on his limited interactions with her in the workplace, do not cast doubt on Universal's honest belief that Fox was not performing up to Universal's standards and that she had a poor attitude.

Finally, Fox's assertion that her successful completion of her forklift certification undermines Universal's legitimate non-discriminatory reasons for her termination based on poor performance

24

and poor attitude fails to establish a material question of fact as to pretext. Universal has not contended that Fox was "unfit" to operate a forklift, but only that some of her performance issues continued when she operated a forklift.

Accordingly, Fox has failed to create an issue of fact that Universal's asserted reason for her termination had no basis in fact.

### b. Did not actually motivate

"[T]he second type of rebuttal of pretext—that a defendant's proffered reasons did not actually motivate its actions—'is of an entirely different ilk' than the other types." *Lawroski v. Nationwide Mut. Ins. Co.*, 570 F. App'x 589, 595 (6th Cir. 2014) (quoting *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008)). Under this prong, the plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate [the adverse employment action] but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal quotation marks omitted). Thus, to establish pretext under this prong, Fox must concede that she was having performance problems and a poor attitude that could have motivated her termination, and show that illegal discrimination nevertheless was the more likely reason for her discharge.

25

Initially, Fox's reliance on this second method is problematic because she denies that she had any performance issues or behavioral concerns. "Indeed, the Sixth Circuit has sometimes refused to even consider the 'did not actually motivate' method of pretext where the plaintiff did not admit the underlying factual basis." *Hartman v. Dow Chem. Co.*, No. 13-cv-14774, 2014 WL 7338722, at *9 (E.D. Mich. Dec. 22, 2014) (Ludington, J.) (citing *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) ("Chattman, however, does not admit the factual basis underlying Toho's proffered legitimate reason for his discipline, which eliminates [this] category of pretext.")).

To the extent Fox is permitted to argue this method while simultaneously contesting the truth of performance issues, the Court finds that she has failed to present evidence that Universal was not actually motivated to terminate her because of performance and attitude issues. Fox has failed to offer any evidence that a discriminatory motivation was the more likely reason for her termination. As stated above, there was consistent documentary evidence that Universal found that Fox, while on probationary status, had performance issues and behavioral concerns. For her part, Fox can only offer her unsupported, conclusory and subjective beliefs that her termination was motivated by illegal discrimination. Such opinions are insufficient as a matter of law to establish pretext. *See Smith v. City of Toledo, Ohio*, 13 F.4th 508, 519 (6th Cir. 2021) (conclusory allegations and subjective beliefs are not

26

enough to establish pretext). Fox has failed to point to anything in the record that would support her speculation that the motivation behind her termination was her age and/or race rather than her performance problems and poor attitude.

Moreover, the fact that the same person, Caudill, hired Fox when she was 55 years old and terminated her two months later, while not dispositive, constitutes additional evidence that allows, but does not mandate, an inference of the lack of discriminatory animus. *See Wexler*, 317 F.3d at 573 (noting the same actor inference can only apply when the employee was "hired and fired by the same individual"); *Mencarelli v. Alfred Williams & Co.*, 656 F. App'x 80, 87 (6th Cir. 2016) (same actor inference is appropriate on summary judgment as "additional evidence that [defendant's] reason for [plaintiff's] termination is not pretextual").

None of the evidence presented by Fox provides a basis upon which a reasonable jury could find that race or age discrimination were the more likely reasons for the termination of Fox's employment than the reasons offered by Universal, and accordingly Fox fails to meet her burden of showing that Universal's reason for her termination did not actually motivate her termination.

### c. Whether the proffered reasons were insufficient to motivate termination

The third way Fox could meet her burden as to pretext is to show that Universal's proffered reason for terminating her was insufficient to

27

motivate that decision. Like the second method, the third avenue for establishing pretext "admits that the employer's proffered reason has basis in fact but denies that it created sufficient cause for the adverse employment action." *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "It 'ordinarily consists of evidence that other employees … were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" *Id.* (quoting *Manzer*, 29 F.3d at 1084). "This method, however, is not identical to a *prima facie* case. … A plaintiff must offer evidence sufficient to allow a reasonable juror to find that the employer was motivated by illegal reasons considering both the employer's stated reasons and evidence the employer offers in support of such reasons." *Id.* Fox fails to raise a material question of fact on this issue.

As explained above, Fox fails to produce any evidence of other employees who engaged in substantially the same conduct and were not terminated, much less other employees on probationary status at the time. Nor does she explain why Universal's findings of poor performance and attitude did not constitute sufficient grounds for the termination of her employment as a probationary employee. *See Chen*, 580 F.3d at 401 (stating than an employer is entitled to summary judgment on pretext

28

when "the evidence [an employer] had at hand when it fired [an employee] … indicated that [the employee's] work was not up to par").

Finally, Fox also contends in her Response that she has established a "pattern or practice" or statistical "evidence of systemic racial and age-based disparities in training and assignment at Universal." ECF No. 18, PageID.205–06. Although Fox does not assert a pattern or practice allegation in her Complaint, *see* ECF No. 1, "[e]vidence that an employer engaged in a pattern or practice of discrimination may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework." *Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 399 (6th Cir. 2013); *see also Williams v. Dearborn Motors I LLC*, No. 20-1351, 2021 WL 3854805, at *6 (6th Cir. Aug. 30, 2021) ("[A] plaintiff may use pattern evidence of disparate treatment ... although, standing alone, it is insufficient evidence to withstand summary judgment," and they still must satisfy the *McDonnell Douglas* framework in order to prevail) (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 782 (7th Cir. 2007)).

Fox, however, has not established an "otherwise viable claim for disparate treatment" based on race or age for the reasons discussed above. Moreover, she makes no attempt to present *any* statistical evidence to back up her claims. She relies instead solely on anecdotal evidence regarding her claims of discriminatory treatment based on race or age, that another employee believes she was treated unfairly because

29

of her sex (and Fox does not assert a sex discrimination claim), and that Fox believes other employees received favoritism because of friendships with supervisors. *See* ECF No. 18, PageID.181, 205–06. Universal, on the other hand, has presented a document listing all the individuals hired at Huber during Fox's tenure, which details that all 41 of the 41 hires were African American, and that at least two other people in their 50s and at least one person in their 60s were hired during the fall of 2020 (almost 10% of the new hires), undermining any pattern or practice claim. *See* ECF No. 19-3. Accordingly, the Court finds that Fox has not presented viable pattern or practice evidence in support of her discrimination claims.

Fox therefore is unable to meet her burden to show that Universal's proffered reasons for her termination were pretextual, and Universal is entitled to summary judgment on Fox's race and age discrimination claims under the ELCRA and § 1981. Those claims will be **DISMISSED**.

### B. Fox's Retaliation Claims

Fox asserts retaliation claims against Universal under the ELCRA and § 1981. Compl., Counts I and VII,[4] ECF No. 1. Fox contends that after complaining about not being placed on the Hi-Lo because of her age or race, she was subjected to heightened scrutiny and increased criticism and then terminated. Like discrimination claims, retaliation claims

---

[4]    Fox's retaliation claim under the ELCRA is her fifth claim. Her Complaint does not contain Counts V or VI. *See* ECF No. 1.

under these statutes are analyzed under the framework developed for Title VII claims. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021); *Rogers*, 897 F.3d at 771–72. At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on a retaliation claim. *Rogers*, 897 F.3d at 771–72. When a plaintiff offers only circumstantial evidence of retaliation, the *McDonnell Douglas/Burdine* burden-shifting framework applies. *Id.* Under this framework, the plaintiff must first make out a prima facie case of retaliation. *Id.* at 772. Then, "the burden shifts to the employer to proffer a legitimate, [nonretaliatory] reason for its decision. *Id.* If the employer does so, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (citation modified).

### 1. Prima facie case

Fox here seeks to proceed under the circumstantial evidence method. Under that paradigm, Fox has the initial burden to establish a prima facie case of retaliation under the ELCRA and/or § 1981 by establishing that: (1) she engaged in protected activity; (2) Universal was aware of the protected activity; (3) Universal took an action that was materially adverse to her; and (4) there is a causal connection between her protected activity and Universal's adverse action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

31

For purposes of this motion, Universal only challenges the fourth element of Fox's prima facie case of retaliation— arguing that Fox cannot establish that there is a causal connection between her alleged protected activity and her termination. ECF No. 15, PageID.94. Universal states that Fox only testified that she complained to members of management regarding the terms and conditions of her employment, and that Universal terminated her employment a short time later. Universal contends that the fact that one or more events occurred sequentially is insufficient to show that the events are causally connected. *Id.*

Fox responds that she "was terminated on December 10, 2020, just days after raising complaints to supervisors about discriminatory treatment, including the preferential assignment of Hi-Lo duties to younger, non-African American employees" and that this "suspicious timing strongly supports a finding of retaliatory motive and pretext." ECF No. 18, PageID.200, 202–03.

"'Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.'" *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (quoting *Mickey*, 516 F.3d at 525); *see also Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 427 (6th Cir. 2021) (finding a "one-to two-month time lapse between the protected activities and the adverse

32

actions suffices to establish a genuine issue as to causation"); *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664–65 (6th Cir. 2020) (explaining that an adverse employment action "just a few months" after learning of a plaintiff's protected activity is sufficient to establish causal connection on temporal proximity alone).

Thus, taking Fox's allegations as true, the alleged short time period between her alleged complaints and her termination is sufficient to at least raise a material question of fact sufficient to satisfy the causal connection prong of Fox's prima face case of retaliation at the summary judgment stage. *See, e.g., McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation when "only 13 days" separated protected activity from adverse action, reasoning that an "employer's knowledge of the protected activity coupled with an adverse action occurring close in time can create an inference of causation where the particular circumstances strengthen the inference of causation"); *Shefferly v. Health Alliance Plan of Mich.*, 94 F. App'x 275, 285 (6th Cir. 2004) (stating that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation").[5]

---

[5]     Universal argues that temporal proximity is "ordinarily not enough to support an inference of retaliation." ECF No. 19, PageID.256 fn.1 (citing *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 367 (6th

### 2. Pretext

Because Fox has established a prima facie case of retaliation under the ELCRA and/or § 1981, the burden shifts to Universal to articulate a legitimate, non-retaliatory reason for the termination of her employment. Here, Universal asserts that Fox was terminated because of poor performance and behavioral concerns. ECF No. 15-11, PageID.172; ECF No. 15-7, PageID.143; ECF No. 15-6, PageID.131. Having articulated a legitimate, non-retaliatory reason for Fox's discharge, Universal has satisfied its burden at this stage. *See Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *4 (6th Cir. June 8, 2023) (the burden on the defendant to present a legitimate, non-retaliatory reason for the plaintiff's termination "is quite low; it is only one of production, not persuasion, and we make no credibility assessment") (citation modified). Thus, the burden shifts back to Fox to show that Universal's proffered reason for her discharge was pretextual.

As discussed *supra*, Fox may establish that Universal's proffered reasons for her discharge were a pretext for retaliation by showing that the proffered reason (1) has no basis in fact; (2) did not actually motivate

---

Cir.2018)). However, the court in *Bailey* was not addressing the prima facie prong of the *McDonnell Douglas* tri-partite analysis, but was instead addressing whether the plaintiff could establish pretext. As discussed *infra*, while temporal proximity may suffice for causation at the prima facie stage, it "cannot be the sole basis for finding pretext" and must be "accompanied by some other independent evidence." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 516 (6th Cir. 2021) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)).

her discharge; or (3) was insufficient to motivate her discharge. *See id.* at *5; *see also Miles*, 946 F.3d at 888. This three-part test need not be applied rigidly, as pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? *See Miles*, 946 F.3d at 888.

Fox contends that she was terminated close in time to her complaints to her supervisors and that Universal failed to provide contemporaneous documentation justifying her termination. ECF No. 18, PageID.203–04. Although temporal proximity lends some support to Fox's retaliation theory, Universal has offered non-retaliatory, business reasons for her termination, and timing alone cannot show that these reasons are pretextual. *See Briggs*, 11 F.4th at 516 ("[T]emporal proximity cannot be the sole basis for finding pretext[.]"). As discussed with regard to her discrimination claims discussed *supra*, Fox has failed to create a triable issue of material fact over whether Universal's proffered reasons for her termination—poor performance and behavioral concerns—were a mere pretext for retaliation. *See supra* at III.A.2; *Milczak*, 102 F.4th at 789 & n.2 (finding plaintiff "would be unable to show [defendant's] explanation for its actions was pretextual [for plaintiff's retaliation claim] for the same reasons he could not show pretext on his disparate treatment claim."). Universal has presented evidence that on December 1, 2020, Caudill completed Fox's Temp to Direct Hire Evaluation, and identified both performance issues and behavioral concerns on this form. ECF No. 15-11, PageID.172. Fox's

35

supervisor, Lanier, then met with Massey to relay her concerns regarding Fox's work performance, and Massey relayed those concerns in a December 10, 2020 email, recommending Fox's termination, again identifying both performance issues and behavioral concerns. ECF No. 15-7, PageID.143. Fox has not advanced any evidence that these reasons had no basis in fact, that they were not Universal's true motive, or that the reasons were insufficient to support her termination.

Thus, while timing may be some evidence of retaliation, it is not sufficient by itself to demonstrate that a legitimate business reason is pretextual. Fox must offer some evidence beyond timing to create a genuine issue of fact as to pretext, but she is unable to do so, while considerable evidence cuts the other way. No evidence has been offered by Fox that would allow a reasonable jury to find that but-for Fox's complaints Universal would have scrutinized her performance less harshly and allowed her to continue working beyond her probationary status. In all, Fox has not shown that Universal's reasons for her termination are pretextual, and Universal is entitled to summary judgment on Fox's retaliation claims under the ELCRA and § 1981, and those claims will be **DISMISSED**.

## IV.   CONCLUSION

For the reasons stated above, Universal's Motion for Summary Judgment, ECF No. 15, is **GRANTED**, and Fox's claims that Universal discriminated against her on the basis of her race (African American) and

36

age in violation of the ELCRA and 42 U.S.C. § 1981, and retaliated against her in violation of the ELCRA and 42 U.S.C. § 1981 for complaining of discrimination are **DISMISSED WITH PREJUDICE**.

This is a final order that closes the case.

**IT IS SO ORDERED.**

Dated: March 17, 2026 /s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

37